Your Honors, may it please the Court, I am James Laughlin, and I represent the appellant Genaro Alvarado-Martinez. The Court's Commission would like to defer two minutes to my time for rebuttal. This case presents the question of whether, given the particular circumstances of this case, rap sheets submitted by the government are sufficient to prove, by a preponderance of the evidence, that Mr. Alvarado suffered four convictions that they used to assign him criminal history points. Are you asking us to hold that under no circumstances are rap sheets usable as information in this context? Or are you saying, in this case, because of the particulars of these rap sheets? Genaro Alvarado-Martinez I'm saying the second thing. In this particular case, given the particulars of these rap sheets, the government, relying on these rap sheets alone, even in conjunction with the docket sheets, cannot satisfy its evidence, its burden to prove, beyond a preponderance of the evidence, that these four cases were actually convictions suffered by Mr. Alvarado. Roberts. Is that a legal issue, or does it have a factual component? What is it? What's the standard of review, in other words? Genaro Alvarado-Martinez It's a court recognizing, I believe, Romero-Rendon, the question of whether a particular piece of document is credible or reliable, that's a review for abuse of discretion. Whether, in balancing the evidence, a standard of proof has been met is reviewed for clear error. So I would argue that the correct standard of review here is abuse of discretion, because what we're really talking about is, what is the reliability of these rap sheets? I want to emphasize, first off, that I don't make the allegation that none of the information in these rap sheets belonged to Mr. Alvarado. Clearly, some of it does. It has his photograph and other identifying information. And Mr. Alvarado, who does have a criminal history, was clearly linked to these rap sheets at some point using his CII, California Identification Index number, or CII number. The problem is that there are well-documented problems with California CLEATS site, CLEATS database, and similar databases run by the FBI, for example, that show that a person entire criminal history can be transposed over to another person if, due to a clerical or computer mistake, that first person's CII number is somehow linked to the second person's CII number. In fact, that's exactly what happened in the case of our... Well, now, it sounds to me, again, like you're attacking the rap sheet, per se, as an unreliable vehicle from which to glean information. What I'm trying to do, Your Honor, is to highlight the problems with the rap sheets to show why, in this particular circumstances, the rap... This is one of those circumstances where there was a screw-up. Yes. And so what I would like to do... So I hear you admit that some of it applies to your client, but some of it doesn't. So you're carving out some of this and saying, these are the... Right. The four challenge convictions are the ones that we are disputing. And we cited the case of Perez Torres v. State of California, where a man actually spent nearly a month in custody because just this type of error occurred. He had been arrested previously and had been assigned a CII number. Later on, somebody completely different had been arrested and actually convicted and got placed on parole, and he had his own CII number. Records make mistakes. You're right. That's true. And as pointed out in the opening brief, the Department of Justice itself noted in a 2001 report that most criminal history databases have unacceptable levels of inaccuracies. Did you try the case below? No, I didn't. Was...is there present in the record specific suggestions as to these particular rap sheets, why they are or could be inaccurate? Yes. Trial counsel pointed out that these...all these rap sheets... Actually, none of these rap sheets use Mr. Alvarado's name in this case. None of them say Genaro Alvarado Martinez. They each refer to somebody by the true name of Ismael Zarratos, and that person goes by different aliases in the different cases. The only thing that we have that says that Ismael Zarratos is Genaro Alvarado Martinez is the rap sheet. And I recognize that the rap sheets are supposed to be based on fingerprint comparison. The rap sheets say so-and-so also known as... Right. In fact, there's a list of 30 aliases that...on this rap sheet. And it also...it covers...there's about 40 different entries of arrests and or court appearances spanning 25 years. And those are the facts that I think allow this court to say that in this particular case, the government can't prove with this rap sheet alone by preponderance of the evidence that these cases belong to Mr. Alvarado. So the fingerprints track the rap sheet to Alvarado, but not the individual entries, the four that you identify. The way this...the way I understand the system is supposed to work is that when there is an arrest and fingerprints are taken, they are used to link up to the cleat system by filing a report. That report is then sent to somebody in Sacramento who's a clerk who enters that into the database. And it should be...but it's due to the fact that at some point somebody looked at fingerprints and says, this person's the same as this person. So if the system works right, the four cases that you're complaining about should be on the rap sheet only because the fingerprints from those four cases matched up? Yes. The system works right? Yes. And it is possible, for example, to compare this case to the case of Mr. Perez-Torres in Perez-Torres v. California. It is possible that what you do, you have two different defendants. That one is this Mr. Cerratos who had these four convictions and others and has developed his own criminal history with his own CII number and his own set of fingerprints. And then you have somebody else over here, we'll call him Mr. Alvarado, who has his own criminal history, his own CII number. If any time in the last 25 years a clerk makes the same mistake that was made in Perez-Torres, they say, oh, I think these two people are the same person, I'll just link up these two CII numbers. That means that all of Mr. Cerratos' criminal history comes into Mr. Alvarado's rap sheet and the whole Mr. Alvarado's criminal stuff goes into Mr. Cerrato's rap sheet. Because one rap sheet, they can put the same person at that point. Did these come out of LAPD? Curiously, and it won't affect my decision one way or another, there was a big article in the paper, I think it was yesterday, about how screwed up LAPD's fingerprint identification section is and all the mistakes that it makes. That's not in the record, it's neither here nor there. Actually, I don't know. I know they all came out of the county of Los Angeles, but I'm not sure who the arresting officers were in each case. Just to pass the time, you might want to look at that article. Okay, I will take a look at that. Thank you. One of the things on page 14 of the red brief, there's the district court made a statement to defense counsel. And I'm not going to read the whole thing, but what the judge said is, and I quote, I think there's enough consistency in terms of numbers and in terms of details in the docket sheets that convinced the court, at least by a preponderance of the evidence, that those four convictions are, in fact, what are referenced on these rap sheets. And these rap sheets are connected to this defendant by a preponderance of the evidence. And from what I gathered from that summary, there were other things that connected this defendant to the rap sheet. And what do you say to that? Your Honor raises a good point, and I wanted to talk about that. What the district court did was, and I think he did the best he could with the records he had, he compared the docket sheets, which are the only remaining documents left pertaining to the four convictions at issue, and tried to link them up to the rap sheets. And in each case, they did match up. The docket sheets would reflect what's on the rap sheets. The problem with what the court did, the court didn't appreciate that that really doesn't make a difference, because the – those documents are going to be consistent with the rap sheets, because at some point somebody said, this person, Ismael Saracos, is the same as this person. Therefore, we're going to put it on his rap sheet. So the fact that the docket sheets match up with the rap sheets doesn't address the underlying issue of how much faith can we have in the process by which all of these cases end up on the rap sheet. How many aliases did your client have? I counted three. You see, that's another factor, too. This is a guy who specializes in false identification. Well, I do think that the fact that there are 30 aliases. So, I mean, if somebody never had an alias, you know, you might have a better case. But if somebody just has aliases all over the place, well, it fits the pattern. I would actually argue the contrary, Your Honor. I think if somebody didn't have any aliases and you had a rap sheet where the names match and there wasn't an extensive criminal history where there were lots of opportunities for errors of these kinds. No, I mean, if you had no alias and the names did not match, then you might wonder. But here where a guy makes up a new name every time he gets arrested or for any other purpose, it sort of fits his chosen way of dealing with the criminal justice system. I can understand that point, but I also think that it's also significant, I think, that a lot of these aliases are much different from each other. And I think that that is actually a factor. What does that mean? Meaning that a lot of times you have, like, somebody who calls himself Gennaro Alvarado Martinez. Sometimes they call themselves Gennaro Martinez Alvarado. But some of these are like Ismael Siracus. It's completely different. He has a lot of those, though, acknowledged. Right. And my argument is that that heightens the potential for this death had been a result of a mistake somewhere along the line in managing the computer system, not so much a contract. You have no independent evidence that a mistake had been made. Is that correct? No, Your Honor. So what you're saying is, well, there may have been a mistake here, and there hasn't been a sufficient showing to document the rap sheets with the defendant. Correct. My argument is that the rap sheets have to be evaluated on their own terms. Are they reliable enough to satisfy the beyond preponderance evidence standard? With a pretty deferential standard of review from two points of view. Okay. You're over your time. Thanks for coming in today. We appreciate your argument. Mr. Raphael, hear from the government at this time. Let me please the Court. Good morning, Your Honors. Tony Raphael on behalf of the United States. You tried the case, right? Yes, Your Honor. It was a guilty plea and not a trial, but yes, it was a trial. You were counsel at the trial, sir. That's correct, Your Honor. There are four misdemeanors that the defense is objecting to. All four misdemeanors, according to the docket sheets, were sustained by Ismael Serratos. My colleague, defense counsel, argues that the only thing that ties Ismael Serratos to the rap sheets, to the misdemeanors of the rap sheet. That's not correct, Your Honors. In fact, his own words tie him to the misdemeanors. What do I mean by that? In the PSR for this case, there's a felony conviction. This is in paragraphs 20 and 21. He received three points for that. It's a felony conviction, 11-year sentence on the State side. Not objected to in this case. Case numbers for that felony conviction, multiple cases, four cases that were consolidated. KA-5838 and KA-4742. Why is that important? Well, going back to the PSR, the same PSR in this case, paragraph 5, the probation officer stated that when the defendant was interviewed in conjunction with the four cases, the 11-year sentence, he discussed one of the misdemeanors in this case that's being objected to. That's paragraph 5. He discussed the misdemeanor with the case number 86M07902, which is also with the name of Ismael Serratos. And he stated, reported that he took perfume from a market and planned to give part of the item of theft as a gift. The defendant himself connected himself to Ismael Serratos, didn't object to that. That's him saying, not only did I commit the felony conviction where I received an 11-year sentence, but that misdemeanor, one of the four defenses objecting to, I did that, too. And these are the details. But we have more than that in this case. And Judge Larson, that sentencing, had more than that. The Martinez case, Your Honors, California Supreme Court case that we cited, that we cited also to Judge Larson, goes into great details discussing the scheme, the statutory scheme in the State of California concerning the use of threats, the California Law Enforcement Telecommunications System, the California Identification Index, and the CII. And what do we have in this case? There's no mix-up. How do we know that? The rap sheets. Judge Larson looked at the fact that there were descriptions of tattoos, photos  No indication on the record whatsoever that the defendant didn't have those tattoos. In fact, Judge Larson commented to defense counsel at trial in his sentencing, if your client didn't have those tattoos, you would be telling me now. Telephoto ID. That's in the excerpt of record at page 141. Two things about it that are important. Let's see. On page 141, it lists another alias of the defendant. Narvaez Artemio, under his photo. That's the same defendant sitting in court. But what does that also give? It gives the CII number for this person who claims to be Artemio Narvaez. The CII number is 07184956. If we go back to the rap sheet, that's the same, and that's on page 141. On page 136 of the excerpt of record, that's the same CII number for the rap sheet. Unlike the Perez-Torres case, there's no indication here that there was a mix-up in the index number. As Judge Trott suggested, this is simply a case where the defendant, every time he runs into law enforcement, he's going to come up with a new name. And he's going to come up with more than three names. The 136 suggests there were 30 names. Sure, Your Honor. I think I'm always referring to the statement by defense counsel of three names. But here we know that he admitted he was Ismael Sorantes. He has a different name in this case. We also know from the photo that I just pointed out, he had a third name in that photo. The transcript of the sentencing talks about tattoos. Does that come into play? That is correct, Your Honor. There is a description of the tattoos. And, in fact, in the clefts report submitted to Judge Larson at sentencing, and I'm referring to pages starting at 142, 143, and 143, and also the printout itself, the clefts printout at page 134, I think there's a description or a description of the location of the seven tattoos for the defendant, for the person who's associated with this clefts report. And Judge Larson made a reference at sentencing that if, indeed, the defendant did not have the tattoos that are described in the clefts, certainly defense counsel would have pointed that out to the court, because they are discussed in the clefts and in the photos that I just mentioned. I'm just trying to track back. You said that the case that he admitted was his was KA005838, which is in paragraph 5 on page 004. I'm looking at the ---- No, Your Honor. That's correct. The case, paragraph 5 of the PSR, discusses case number, the one in paragraph 4 above it. And what the probation officer is saying that this defendant, when he was being sentenced in the case that's in paragraph 20 and 21, which is the 4742 and the 5838 that he took perfume from a market and planned to give part of the items of theft as a gift. And that case number, he's, in that case number, he's Serrato's. That is correct, Your Honor. Okay. Gotcha. If the Court has no further questions, I will simply submit on the papers and the argument in this case. I don't see any. Thank you, counsel. Thank you, Your Honor. 30 seconds for rebuttal. You did use up all your time. But if there's something you would like to rebut. Well, is counsel right? 5838, is that his case? And does he say that's my case? I stole jewelry. And that's the case he's identified as Serrato's? Your Honor, this is the first time the government's bringing it up. It wasn't brought up below and it wasn't brought up in this brief. So I'm kind of seeing a picture of that. There it is. But what I will say is, again, I think that it's always important to look at the underlying documents in this case. And I haven't seen this. And so. You haven't seen the sentencing report? No, I've seen the sentencing report. But I haven't seen the probation report that, I mean, you have several levels here of a probation officer in Los Angeles in that other case taking down a statement from a defendant and then it being repeated here. What I'm saying, without being able to look at this further, I don't know how accurate this is. And as I said, it wasn't brought up before, so that's why I didn't look at it. Okay. Thank you. Thank you both for your arguments. The case just argued will be submitted. We'll proceed to the next case on the argument calendar, which is the United States v. Nieha.
judges: Trott, Hawkins, Bright